UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FELTER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DELL TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No. 21-cv-04187-VC<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 32 |

    Felter and Washington assented to the arbitration provision in Dell's Terms of Sale when they clicked "Accept" on the start-up screen of their computers. Although there are reasonable arguments that the arbitration agreements should be invalidated, the parties clearly delegated the question of enforceability to the arbitrator, and so those issues are for the arbitrator to decide.[1]

    Felter and Washington argue that, notwithstanding their acceptance of the Terms of Sale, no contract was formed because "the writing [did] not appear to be a contract and the terms [were] not called to the attention of the recipient.'" *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001). In *Norcia v. Samsung Telecommunications America, LLC*, the Ninth Circuit applied this rule to hold that a consumer was not bound by an arbitration agreement contained in a brochure entitled "Product Safety & Warranty Information." 845 F.3d 1279, 1289 (9th Cir. 2017). The court explained that "[a] reasonable person in [the consumer's] position would not be on notice that the brochure

---

[1] Dell's Terms of Sale include a Texas choice-of-law provision. Felter and Washington argue that California law applies to this motion because the Court is sitting in diversity. Dell asserts that the questions raised in its motion are "answered the same way under both Texas and California law," and so California law will be applied.

contained a freestanding obligation outside the scope of the warranty," and so no arbitration agreement was formed. *Id.* But here, the start-up screen clearly appeared to be a contract and drew attention to its terms. While the top of the start-up screen said, "Windows 10 License Agreement," the remainder of the screen was split into two columns: one for the Windows 10 License Agreement and one for Dell's Terms of Sale. The second column stated, in the same size font as the Windows 10 License Agreement: "Your purchase and use of this product is subject to and governed by Dell's applicable Terms of Sale…By the act of clicking, 'I accept' you agree (or re-affirm your agreement to) the foregoing terms and conditions." Dkt. No. 32-8. The "Accept" button was immediately below the Terms of Sale. This design was sufficient to put the plaintiffs on inquiry notice of the agreement.

It is true that the arbitration provision did not appear on the start-up screen itself; the plaintiffs needed to scroll down to see it. But "courts have long upheld contracts where 'the consumer is prompted to examine terms of sale that are located somewhere else.'" *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (quoting *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012)). In the context of clickwrap and browsewrap agreements, a consumer is bound by an arbitration agreement if "a reasonably prudent Internet consumer" would be put on "inquiry notice" of the "agreement's existence and contents." *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) (quoting *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 863 (2016)). Here, a reasonably prudent computer user would understand that they needed to scroll down to see the agreement's terms. *See also id.* at 484.

Felter and Washington additionally argue that because the contract was formed when they agreed to purchase their computers, no additional terms could be added after the fact. They suggest these "in-the-box" contracts—contracts provided after the purchase of a product—are unenforceable in California. But the analogy to in-the-box contracts is misplaced here because Felter and Washington affirmatively accepted the Terms of Sale. *Tompkins*, 2014 WL 2903752, at *8.

To be sure, there are problems with accepting the idea that Dell can add new material terms after a consumer's purchase. For one, it would not have been easy for Washington to decline the Terms of Sale.[2] Washington purchased his computer directly from Dell, and Dell's return policy permitted it to charge a 15% restocking fee and return shipping fees. That could have been upwards of $500. (Dell argues that it allowed free returns during the relevant period.) It is quite possible that this restocking fee renders the Terms of Sale unconscionable, at least for Washington. *See Tompkins*, 2014 WL 2903752, at *14–15. *See also Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997). Perhaps the fee could also support an argument for economic duress. *See, e.g., Rich & Whillock, Inc. v. Ashton Development, Inc.*, 157 Cal. App. 3d 1154, 1158–59 (Ct. App. 1984).

More generally, if a contract is formed when a consumer agrees to purchase a computer, and if they had no notice of any additional terms at that point, then there is a colorable argument that Dell breached that contract by conditioning use of the computer on acceptance of additional terms. Perhaps this could also implicate the concept of duress—especially for consumers subject to the restocking fee. *See Rich & Whillock*, 157 Cal. App. 3d at 1159 ("[A] a bad faith threat to breach a contract…may constitute a wrongful act for purposes of the economic duress doctrine.").[3]

But the arbitration agreement clearly delegates these questions to the arbitrator. Dkt. No. 32-6 ("The arbitrator shall have exclusive authority to resolve any dispute relating to arbitrability and/or enforceability of this arbitration provision including any unconscionability challenge or any other challenge that the arbitration provision or the Agreement is void, voidable or otherwise invalid."). The plaintiffs have not challenged the delegation clause specifically, and so Supreme

---

[2] Felter purchased his computer from Best Buy, which offered free returns, though he still would have needed to go back to the store.

[3] Some courts have held that a contract is formed only when a consumer keeps the product—not when they make the initial purchase. *See, e.g., ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452–53 (7th Cir. 1996). Professor Mark A. Lemley describes this conclusion as "questionable," noting that the courts arguably should treat "the additional terms as a proposed modification" to the contract formed at purchase. Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev 459, 468 (2006).

Court precedent requires the Court to enforce it, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). *See also Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 97 (1st Cir. 2015).

Accordingly, the motion to compel arbitration is granted, and the case is dismissed without prejudice. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014).

**IT IS SO ORDERED.**

Dated: July 29, 2022

VINCE CHHABRIA
United States District Judge